IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAMES ALLEN DANIELS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 22-cv-210-DES |
| | ) |
| MARTIN O'MALLEY,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Pursuant to 42 U.S.C. § 405(g), Plaintiff James Allen Daniels ("Claimant") seeks judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability insurance benefits under Title II of the Social Security Act (the "Act"). For the reasons explained below, the Court AFFIRMS the Commissioner's decision denying benefits.

**I.      Statutory Framework and Standard of Review**

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be deemed disabled under the Act, a claimant's impairment(s) must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

---

[1] Effective December 20, 2023, Martin O'Malley, Commissioner of Social Security, is substituted as the defendant in this action pursuant to Fed. R. Civ. P. 25(d). No further action is necessary to continue this suit by reason of 42 U.S.C. § 405(g).

Social security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520(a)(4). This process requires the Commissioner to consider: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a medically determinable severe impairment(s); (3) whether such impairment meets or medically equals a listed impairment set forth in 20 C.F.R. pt. 404, subpt. P., app. 1; (4) whether the claimant can perform his past relevant work considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"); and (5) whether the claimant can perform other work considering the RFC and certain vocational factors. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The claimant bears the burden of proof through step four, but the burden shifts to the Commissioner at step five. *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007). If it is determined, at any step of the process, that the claimant is or is not disabled, evaluation under a subsequent step is not necessary. *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir. 1988).

A district court's review of the Commissioner's final decision is governed by 42 U.S.C. § 405(g). The scope of judicial review under § 405(g) is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's factual findings are supported by substantial evidence. *See Noreja v. Soc. Sec. Comm'r,* 952 F.3d 1172, 1177 (10th Cir. 2020). Substantial evidence is more than a scintilla but means only "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938). In conducting its review, the Court "may neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Noreja,* 952 F.3d at 1178 (quotation omitted). Rather, the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from

the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (quotation omitted).

## II.     Claimant's Background and Procedural History

In August 2015, Claimant applied for disability insurance benefits under Title II of the Act. (R. 151-52). Claimant alleges he has been unable to work since an amended onset date of August 19, 2014, due to a back injury, arthritis, hypertension, diabetes, nerve damage, ankle damage, a skin condition, and depression. (R. 37, 166). Claimant was 54 years old on the date of the ALJ's decision. (R. 26, 151, 513). He has a high school education, vocational training in welding, and past work as an automobile mechanic. (R. 167, 608).

Claimant's claim for benefits was denied initially and on reconsideration, and he requested a hearing. (R. 59-82, 95-96). ALJ Anne H. Pate conducted an administrative hearing and issued a decision on August 17, 2017, finding Claimant not disabled. (R. 10-23, 33-58). The Appeals Council denied review, and Claimant appealed to the United States District Court for the Eastern District of Oklahoma. (1-6, 645-49). The Court reversed the ALJ's decision and remanded the case on January 3, 2020 (650-65). On remand, ALJ Jana Kinkade conducted an administrative hearing and issued a decision on November 12, 2020, finding Claimant not disabled. (R. 501-13, 578-617). Claimant did not file written exceptions and the Appeals Council did not assume jurisdiction, rendering ALJ Kinkade's November 2020 decision the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §404.984(c)-(d). Claimant filed this appeal on July 22, 2022. (Docket No. 2).

## III.    The ALJ's Decision

In her decision, the ALJ found Claimant last met the insured requirements for Title II purposes on December 31, 2015. (R. 503). The ALJ then found at step one that Claimant had not

engaged in substantial gainful activity between the alleged onset date of August 19, 2014, and his date last insured. (R. 504). At step two, the ALJ found Claimant had severe impairments of history of lumbar spine surgery for herniated disk, degenerative disc disease of the lumbar spine, osteoarthritis, type II diabetes mellitus, hypertension, obesity, peripheral neuropathy, and suspected chronic obstructive pulmonary disorder. (*Id*.). Additionally, the ALJ found Claimant had the non-severe impairments of hyperlipidemia, adjustment disorder, depression, and anxiety. (R. 507). At step three, the ALJ found Claimant's impairments did not meet or equal a listed impairment. (R. 508-09).

Before proceeding to step four, the ALJ determined Plaintiff had the RFC, through his date last insured, to perform a limited range of light work as defined in 20 C.F.R. § 404.1567(b), finding he could:

> lift and carry up to 20 pounds occasionally and 10 pounds frequently; walk or stand six hours of an eight-hour workday; and sit for six hours of an eight-hour workday. The claimant was limited to occasional pushing and pulling. The claimant was able to occasionally climb ramps or stairs, never climb ladders, ropes, or scaffolds, frequently balance, and occasionally stoop, kneel, crouch and crawl. The claimant required work that had occasional exposure to concentration of pulmonary irritants such as dusts, fumes, odors, gases, poor ventilation, and no exposure to unprotected heights. The claimant was limited to indoor work and a temperature-controlled environment.

(R. 509). The ALJ provided a summary of the evidence that went into this finding. (R. 504-11).

At step four, the ALJ concluded that Claimant could not return to his past relevant work. (R. 511). Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Claimant could perform other work existing in significant numbers in the national economy, including packer, assembler, and belt inspector. (R. 511-12). Accordingly, the ALJ concluded Claimant was not disabled through his date last insured of December 31, 2015. (R. 512-13).

## IV.     Issues Presented

Claimant contends the ALJ erred by: (1) failing to properly consider his non-severe mental impairments when assessing the RFC (Docket No. 20 at 4); (2) failing to properly evaluate the medical source opinions of treating physician Dr. Monica Woodall (*id.* at 4-8); and (3) improperly relying on Claimant's failure to seek treatment to discount his symptoms (*id.* at 7).  The Court finds no reversible error in the ALJ's decision.

## V.      Analysis

### A.      ALJ Properly Considered Claimant's Non-severe Mental Impairments

If a claimant has a medically determinable mental impairment, the ALJ must assess the claimant's limitations attributable to such mental impairment(s) in the following four broad areas of mental functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. § 404.1520a(c)(3).  These areas of mental functioning are known as the "paragraph B" criteria.  20 C.F.R. pt. 404, subpt. P., app. 1 § 12.00(E).  The ALJ rates the claimant's degree of limitation in each of the "paragraph B" criteria using a five-point scale: none, mild, moderate, marked, or extreme. 20 C.F.R. § 404.1520a(c)(4).  "The ALJ's degree-of-limitation ratings then inform his conclusions at steps two and three of the five-step analysis." *Wells v. Colvin,* 727 F.3d 1061, 1068 (10th Cir. 2013).  If the ALJ rates the claimant's degree of functional limitation as "none" or "mild," he will generally find the claimant's mental impairment(s) not severe at step two.  20 C.F.R. § 404.150a(d)(1).  If the mental impairment is severe, the ALJ will then determine at step three whether such impairment meets or equals one of the listed impairments the Commissioner deems sufficiently severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520a(d)(2) & pt. 404, subpt. P., app. 1 ("the listings").

In assessing Claimant's adjustment disorder, depression, and anxiety under the "paragraph B" criteria, the ALJ found that Claimant had a mild limitation in the mental functional areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and no limitation in the mental functional area of adapting and managing oneself. (R. 508). The ALJ thus found Claimant's adjustment disorder, depression, and anxiety non-severe and explained that such impairments do not cause "more than a minimal limitation in the claimant's ability to perform basic mental work activities[.]" (R. 508-09).

Claimant asserts the ALJ erred by failing to account for her step-two findings of mild limitations in the "paragraph B" criteria. (Docket No. 20 at 4, Docket No. 27 at 2-4). However, an ALJ is not necessarily bound by her step-two findings when determining a claimant's RFC because "the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996). The mental RFC assessment used at steps four and five requires a "more detailed assessment" of the various functions contained in the broad mental limitation categories listed at steps two and three. *Id*.

In her written decision, the ALJ considered Plaintiff's adjustment disorder, depression, and anxiety as part of the RFC assessment by discussing Dr. Woodall's essentially normal mental status examinations and Dr. Foley's consultative opinion, which the ALJ thoroughly summarized elsewhere in her decision. Specifically, the ALJ noted Dr. Foley found Claimant was oriented, exhibited good attention, had normal speech, had an adequate fund of information, appeared to be of average intelligence, had adequate concentration and memory functioning, and presented with an even mood and appropriate affect. (R. 506). The ALJ also noted Dr. Foley diagnosed Claimant with adjustment disorder with depressed mood related to change in physical functioning. (*Id.*) The

ALJ adopted Dr. Foley's opinion the Claimant's adjustment disorder did not limit him in a social or occupational manner. (R. 506, 510). As support for this finding, the ALJ found Dr. Foley's opinion was supported by appropriate clinical findings, Claimant's minimal mental health treatment history, and his daily activities. (R. 510). Although the ALJ could have been more thorough in her RFC assessment by specifically stating Claimant's mental impairments did not result in any work-related limitations, the Court finds the ALJ's discussion of the evidence sufficient for the Court to follow her reasoning. *See Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. . . . [W]e cannot insist on technical perfection."). Moreover, the Tenth Circuit "has repeatedly held, albeit in unpublished decisions, that mental limitations noted in the threshold inquiry at steps two and three do not apply at later steps." *Suttles v. Colvin,* 543 F. App'x 824, 826-27 (10th Cir. 2013) (unpublished) (citing *Beasley v. Colvin,* 520 F. App'x 748, 754 (10th Cir. 2013); *DeFalco-Miller,* 520 F. App'x 741, 747-48 (10th Cir. 2013)).

    **B.**    **ALJ Properly Evaluated Dr. Woodall's Opinions**

Claimant contends the ALJ erred in evaluating Dr. Woodall's opinion, because she failed to determine whether such opinion was due controlling weight and failed to consider the relevant factors in her analysis. (Docket No. 20 at 4-8). Claimant's arguments are belied by the record.

For claims filed before March 27, 2017, the ALJ must give a treating physician's medical opinion controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is not given controlling weight,

7

the ALJ must explain what weight, if any, she assigned to the opinion after considering the pertinent factors. *Watkins v. Barnhart,* 350 F.3d 1297, 1300-01 (10th Cir. 2003). Those factors are: (1) the examining relationship; (2) the length, nature, and extent of the treatment relationship and frequency of examination; (3) the degree to which the medical source presents relevant evidence to support the opinion; (4) the opinion's consistency with the record as a whole; (5) the specialization of the medical source; and (6) any other factors that may support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6). After considering these factors, the ALJ must provide "good reasons" for the weight assigned to a treating physician's opinion, and "specific, legitimate reasons" if he completely rejects it. *Watkins,* 350 F.3d at 1301. The ALJ is not required to discuss every factor when deciding how much weight to give a treating physician's opinion, as not every factor will apply in every case. *See Oldham v. Astrue,* 509 F.3d 1254, 1258 (10th Cir. 2007). In sum, the ALJ's decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (quoting *Watkins,* 350 F.3d at 1300).

Although the ALJ did not use the exact wording from the regulation, it is clear from her decision that she did not give Dr. Woodall's opinions controlling weight. *See* R. 510 (giving the opinions of Dr. Woodall "little weight"). As part of her analysis, the ALJ found Dr. Woodall's opinions were not supported by her own treatment notes, because they did not document issues with peripheral neuropathy or upper extremity problems through the date last insured. (*Id.*). Additionally, the ALJ found Dr. Woodall's opinions were inconsistent with Claimant's own reported daily activities, and his daily activities as reported by his wife. (*Id.*). These findings are supported by substantial evidence. Therefore, the ALJ did not err in declining to give Dr. Woodall's opinions controlling weight. *See* 20 C.F.R. § 404.1527(c)(2) (requiring a treating

8

physician's opinion to both well-supported by medically acceptable clinical techniques and consistent with other substantial evidence in the record).

The ALJ also sufficiently considered the relevant factors in giving Dr. Woodall's opinions little weight, including the examining relationship, the treatment relationship, consistency, and other relevant factors. *See* 20 C.F.R. § 404.1527(c)(1)-(2), (4), (6). The ALJ acknowledged that Dr. Woodall treated Claimant with medication for arthritis, lower extremity edema, diabetes, wheezing, and/or shortness of breath between August 2014 and the date last insured. (R. 504-06). In so doing, the ALJ considered the examining relationship factor as well as the length, nature, and extent of treatment relationship factor. As set forth above, the ALJ found Dr. Woodall's opinions inconsistent with her own treatment notes as well as Claimant's daily activities. (R. 511). The ALJ thus clearly considered the consistency factor. Lastly, the ALJ also considered two other factors that contradicted Dr. Woodall's opinion. The ALJ not only noted that Claimant's medication noncompliance may have distorted Dr. Woodall's clinical picture, the ALJ also pointed out that Dr. Woodall provided her opinion in 2017, which is well beyond Claimant's date last insured. (R. 510-11).

In assessing the RFC, the ALJ explained that the RFC limitations were supported by Dr. Woodall's findings of lower extremity edema and wheezing on exam and Dr. Cooper's consultative examination findings of positive straight leg raising and decreased range of motion, noting that Claimant's edema was intermittent and that Dr. Cooper also found Claimant had a normal gait and could heel, toe, and tandem walk. (R. 510).

Based on the foregoing, the Court finds the ALJ's decision is "sufficiently specific" to make clear to this Court and subsequent reviewers the weight she assigned to Dr. Woodall's

opinions and the reasons for that weight. *Oldham,* 509 F.3d at 1258. Accordingly, the ALJ did not commit reversible error in her consideration of Dr. Woodall's opinions.

### C. ALJ Properly Evaluated the Consistency of Claimant's Subjective Symptoms

Claimant next contends the ALJ erred in evaluating his subjective symptoms because she improperly relied on his failure to seek treatment in discounting his symptoms. (Docket No. 20 at 7).

The ALJ is required to consider Claimant's subjective complaints, or symptoms[1] in determining the RFC. 20 C.F.R. § 404.1529(a) & (d)(4). The Commissioner uses a two-step process when evaluating a claimant's symptoms.[2] SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017); *see also* 20 C.F.R. § 404.1529. First, the medical signs or laboratory findings must show the existence of medical impairment(s) that result from anatomical, physiological, or psychological abnormalities and could reasonably be expected to produce the symptoms alleged. SSR 16-3p at *3. Second, once such impairments are established, the ALJ must then evaluate the intensity and persistence of the symptoms, so she can determine how the symptoms limit the claimant's ability to work. *Id.* at *4.

Factors the ALJ should consider as part of the symptom evaluation include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of

---

[1] Symptoms means a claimant's "own description of [his] physical or mental impairment." 20 C.F.R. § 404.1502(i).

[2] Tenth Circuit precedent characterizes this as a three-step process: (1) whether the claimant established a symptom-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some symptom of the sort alleged (a "loose nexus"); and (3) if so, whether, considering all objective and subjective evidence, the claimant's symptom was in fact disabling. *See Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166-67 (10th Cir. 2012) (citing *Luna v. Bowen,* 834 F.2d 161, 163-64 (10th Cir. 1987)). The two-step analysis under SSR 16-3p comports with this prior, three-step process under *Luna*. *Paulek v. Colvin,* 662 F. App'x 593-94 (10th Cir. 2016) (unpublished). However, the term "credibility" is no longer used. SSR 16-3p at *2. For purposes of this opinion, the Court will refer to the process as a "consistency analysis."

medications; (5) treatment aside from medication; (6) any other measures the claimant has used to relieve symptoms; and (7) other factors concerning functional limitations and restrictions due to the symptoms. *Id.* at *7-8. The ALJ's consistency findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Cowan v. Astrue,* 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995). The ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulates so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p at *10. Because consistency findings are "peculiarly the province of the finder of fact," reviewing courts should "not upset such determination when supported by substantial evidence." *Cowan,* 552 F.3d at 1190 (quoting *Kepler,* 683 F.3d at 391).

      The Court finds no error in the ALJ's consistency analysis. In her written decision, the ALJ summarized Claimant's Disability Report, Function Report, and administrative hearing testimony, as well as the Third-Party Function Report completed by Claimant's wife. (R. 504). The ALJ then found Claimant's statements regarding the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical and other evidence in the record. (R. 510). In reaching this conclusion, the ALJ discussed several inconsistencies between Claimant's subjective complaints and the evidence of record, including: (1) Claimant's lack of mental health treatment during the relevant period; (2) treatment notes do not reflect a neuropathy diagnosis until after the relevant period; (3) Claimant was not compliant with his mediations, including insulin; (4) Claimant had a normal gait as to speed, safety, and stability without an assistive device at the consultative examination with Dr. Cooper; (5) Claimant could heel walk,

toe walk, and tandem walk at the consultative examination with Dr. Cooper; and (6) Claimant's mental status examinations throughout the record were mostly normal. (R. 510).

Plaintiff asserts that the ALJ relied on his failure to seek treatment as a basis for discounting his symptoms without considering whether he had an acceptable reason for limited treatment. (Docket No. 20 at 6-7.) A claimant's symptoms may be inconsistent with the overall evidence of record "if the frequency or extent of the treatment sought by [a claimant] is not comparable with the degree of the [claimant's] subjective complaints, or if the [claimant] fails to follow prescribed treatment that might improve symptoms ...." SSR 16-3p at *9. However, the ALJ will not find a claimant's symptoms "inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment . . . ." *Id.* One such reason is that "[a]n individual may not be able to afford treatment and may not have access to free or low-cost medical services." *Id.* at *10; *see also Miranda v. Barnhart*, 205 F. App'x 638, 642 (10th Cir. 2005) (unpublished) (holding that an inability to afford treatment "may be a legitimate reason for [a claimant's] failure to seek treatment.").

In this case, Plaintiff explained that he did not have insurance during the relevant period and thus received care and medications through a free clinic. (R. 597). Claimant also explained that he was unable to afford his diabetic supplies. (R. 600). While Plaintiff claims the ALJ failed to consider his inability to pay as a reason for his limited treatment, the ALJ specifically noted Plaintiff had trouble affording medical supplies. (R. 504). Additionally, despite Plaintiff's lack of insurance and ability to pay, Dr. Woodall regularly treated Claimant's physical impairments during the relevant period. (R. 385-93, 440). Thus, there is no indication that Plaintiff sought and was refused treatment due to his inability to pay. *See, e.g., Mann v. Astrue*, 284 F. App'x 567, 571 (10th Cir. 2008) (unpublished) ("While [Plaintiff] claims that her poverty prevents her from

seeking further medical care or prescription pain medication, she has provided no evidence that she . . . has 'been denied medical care because of her financial condition.'" (quoting *Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992) and citing *Threet v. Barnhart*, 353 F.3d 1185, 1191 n.7 (10th Cir. 2003) as "indicating 'that inability to pay may provide a justification for [the] claimant's failure to seek treatment' when there is evidence that the claimant sought and was refused treatment"). In any event, Plaintiff's failure to seek medical care was not the sole reason the ALJ discounted his symptoms. As set forth above, the ALJ provided numerous reasons for finding Plaintiff's symptoms were not as severe or functionally limiting as he alleged.

## VI.  Conclusion

For the foregoing reasons, the Commissioner's decision finding Claimant not disabled is AFFIRMED.

SO ORDERED this 11th day of January, 2024.

_____
D. EDWARD SNOW
UNITED STATES MAGISTRATE JUDGE